**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MARTIN W. NOTHSTEIN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 5:19-cv-01631-EGS |
| | : | |
| USA CYCLING, | : | |
| | : | |
| Defendant. | : | |

**ORDER**

**AND NOW**, this                day of                            , 2019, upon consideration

of the Motion to Dismiss of Defendant USA Cycling, and any response thereto, it is hereby

ORDERED and DECREED that said Motion it GRANTED.  Plaintiff's Complaint is hereby

dismissed in its entirety, with prejudice.

**BY THE COURT:**

_____

**, J.**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MARTIN W. NOTHSTEIN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 5:19-cv-01631-EGS |
| | : | |
| USA CYCLING, | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT USA CYCLING, INC.'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendant, USA Cycling, Inc. (incorrectly named "USA Cycling") (hereinafter "Defendant" or "USA Cycling"), by and through its undersigned counsel, hereby files this Motion to Dismiss the Complaint filed by Plaintiff Martin W. Nothstein ("Plaintiff" or "Nothstein"), pursuant to Federal Rule of Civil Procedure 12(b)(6) and in support thereof, avers as follows:

1.     This action was commenced by Writ of Summons filed in the Court of Common Pleas of Lehigh County, Pennsylvania, on February 8, 2019.  Writ of Summons, Docket Number ("Dkt. No.") 1.

2.     Plaintiff filed his Complaint on March 28, 2019, asserting three counts against USA Cycling:  Defamation (Count I), Invasion of Privacy – False Light (Count II), and Invasion of Privacy – Intrusion Upon Seclusion (Count III).  Complaint ("Compl."), Dkt. No. 1.

3.     On April 15, 2019, USA Cycling removed this matter from the Court of Common Pleas of Lehigh County, Pennsylvania to this Court.  Notice of Removal, Dkt. No. 1.

4.     Plaintiff's Complaint purports to arise out of alleged defamatory, false, and misleading statements made concerning Plaintiff, causing him to sustain damages.  Compl. at ¶¶ 43, 54, 63, 64, 66, and 78, Dkt. No. 1.

5.     Nothstein asserts he is "the most highly decorated track cycling athlete the United

States has ever produced."  Compl. at ¶ 4, Dkt. No. 1.

6.      Nothstein further avers that following his cycling career, he began a career in politics, including serving on the Lehigh County Board of Commissioners.  Compl. at ¶¶ 8, 9, Dkt. No. 1.

7.      The Complaint states that on October 19, 2017, Plaintiff announced his candidacy for the newly formed Seventh Congressional District, and that eleven days later, "an 'anonymous tipster' contacted USA Cycling and apparently accused Nothstein of engaging in sexual misconduct eighteen (18) years ago, in or about 2000 during the Olympic Games in Sydney, Australia."  Compl. at ¶¶ 10, 11, Dkt. No. 1.

8.      Plaintiff claims that the report was "suspicious" and "was proven to be a total fabrication."  Compl. at ¶¶ 14, 17, Dkt. No. 1.

9.      Plaintiff concedes that pursuant to "federal statute and regulations, USA Cycling was obligated to turn over the report from the anonymous tipster to the U.S. Center for SafeSport ('SafeSport')" for investigation.   Compl. at ¶ 19, Dkt. No. 1.

10.     Plaintiff claims that USA Cycling defamed him and violated his confidentiality and privacy rights during SafeSport's investigation by leaking information to the media and falsely reporting on its website that Plaintiff had been suspended from the sport of cycling due to disciplinary reasons.  Compl. at ¶ 20, Dkt. No. 1.

11.     Specifically, Plaintiff asserts that on February 9, 2018, USA Cycling listed Nothstein on a list of suspended cyclists for disciplinary reasons and that the suspension was indefinite.  Compl. at ¶¶ 28-30, Dkt. No. 1.

12.     Nothstein also alleges that in May 2018, USA Cycling gave a phone interview to newspaper reporters and revealed that it had received a complaint about Nothstein which was

forwarded to SafeSport and that the allegation included sexual misconduct.  Compl. at ¶38, Dkt. No. 1.

13.     Plaintiff claims that as a result of Defendant's alleged misconduct, he has sustained damages including but not limited to injury to his reputation and integrity (Compl. at ¶ 54(b)(c)), diminished earning capacity (Compl. at ¶ 54(f)), severe emotional and physical distress (Compl. at ¶ 54(g)); and "other damages" (Compl. at ¶ 78).  Plaintiff alleges that these injuries are "severe and permanent."  Compl. at ¶ 66, Dkt. No. 1.

14.     Federal Rule of Civil Procedure 12(b)(6) authorizes the filing of a motion to dismiss where the complaint fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).

15.     To survive a motion to dismiss, a complaint must set forth "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

16.     Following *Iqbal*, the Third Circuit has adopted a two-part analysis for district courts to follow when presented with a motion to dismiss.  "First, the factual and legal elements of a claim should be separated."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). While all well-pleaded facts must be accepted as true, the court may disregard any legal conclusions.  *Id.* Second, the court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'"  *Id.* at 211 (citing *Iqbal*, 556 U.S. at 678).

17.     "[A] complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts."  *Id.*

3

**The SSAA Precludes Defamation and Invasion of
Privacy Claims Against Mandated Reporters Such as USA Cycling**

18.     The SSAA was enacted "to promote a safe environment in sports that is free from abuse, including emotional, physical, and sexual abuse, of any amateur athlete."  S.R. Rep. No. 115-443 at 1 (2018).

19.     Consistent with this purpose, Congress designated SafeSport "as the independent national safe sport organization" for the United States, with jurisdiction over the United States Olympic Committee ("USOC") and National Governing Bodies ("NGBs"), including USA Cycling.  36 U.S.C. § 220541(a)(1).

20.     SafeSport is charged with developing "training, oversight practices, policies, and procedures" to prevent sexual abuse of amateur athletes and with establishing "mechanisms that allow for the reporting, investigation, and resolution . . . of alleged sexual abuse."  36 U.S.C. § 220541(a)(3)(4).

21.     In considering the SSAA, the primary concern of Congress, as evidenced in the legislative history, was to ensure that suspected incidents of abuse are reported.  *See, e.g.,* 163 Cong. Rec. H. 4577, 4577 (May 25, 2017).

22.     Congress recognized the "need to promote a culture of reporting sexual assault among youth athletes."  163 Cong. Rec. H. 4520, 4522 (May 24, 2017); *see also Id.* at 4522 ("We have too many examples of well-meaning adults remaining silent in the face of child abuse.  This legislation is meant to push Americans to do what is right, even if it is not easy").

23.     As enacted, the SSAA requires all adult members of a NGB to "report immediately" to SafeSport any allegation of child abuse of a minor amateur athlete whenever such members learn of facts leading them to reasonably suspect the minor athlete has suffered an incident of child abuse.  36 U.S.C. § 220542(1)(2)(A).

4

24.    It is clear from the legislative history that Congress intended to impose "mandatory reporting" obligations upon adults working at NGBs.  *See* 164 Cong. Rec. H. 633, 635 (Jan. 29, 2018) ("This bill expands these **mandatory** reporting requirements to adults working at national governing boards. . . ") (emphasis added); *Id.* at 636 ("This bill requires any individual who interacts with our amateur athletes to report suspected child abuse . . . If they fail to do so, they will be held accountable by the new law"); 163 Cong. Rec. H. 4577, 4578 (May 25, 2017) (noting bill "requires **mandatory** and immediate reporting of" abuse) (emphasis added).

25.    Congress did, however, recognize the risk to NGBs that comes with mandatory reporting requirements and thus, "[t]o minimize the risk . . . of litigation from actions performed in the course of the investigation, adjudication, and sharing of information of abuse allegations . . . [the SSAA] would provide certain limitations on liability for [SafeSport], NGBs," and other amateur sports organizations.  S. R. Rep. 115-443, at 2.

26.    Congress recognized that access to adequate insurance has been a challenge and believed that "tort liability exposure should be calibrated to allow [SafeSport] to continue to work to protect amateur athletes from abuse by limiting the risk of potential litigation arising in the course of its legitimate activities."  *Id.* at 3.

27.    To address these concerns, Congress included the following limitation of liability provision in the SSAA:

> (1)  In general.  Except as provided in paragraph (2), ***an applicable entity shall not be liable for damages in any civil action for defamation, libel, slander, or damage to reputation*** arising out of any action or communication, if the action arises from the execution of the responsibilities or functions described in this section, section 220542, or section 220543.

36 U.S.C. § 220541(d) (emphasis added).

28.    The Legislature contemplated that for this "protection [to] extend not only to

actions for defamation, libel, slander, or damage to reputation, but not limited to false light, intrusion upon seclusion, tortious interference, and abuse of process." S.R. Rep. 115-443, at 4.

29.     Nothstein admits that USA Cycling is subject to the SSAA and that "USA Cycling was **obligated** to turn over the report from the anonymous tipster to" SafeSport. Compl. at ¶ 19, Dkt. No. 1 (emphasis added).

30.     As such, based upon the clear language of the statute and consistent with congressional intent, USA Cycling is immunized from the defamation and invasion of privacy claims asserted by Nothstein.

31.     Although no court has yet addressed the SSAA's limitation of liability provision, courts have consistently held that mandatory reporters are immunized from tort liability under similar statutes, reasoning that such laws were enacted to encourage reporting. *Rubinstein v. Baron*, 529 A.2d 1061, 1063 (N.J. Super. 1987); *Dobson v. Harris*, 530 S.E.2d 829, 835 (N.C. 2000) ("there can be no disincentive to report greater than the spectre of the length and expense of a lawsuit"); *Miller v. Watson Inst.*, No. GD13-009177, 2013 Pa. Dist. & Cnty. Dec. LEXIS 244 (Allegheny Cnty. Nov. 1, 2013) (finding social worker was mandated reporter of child abuse and was immune from liability under 23 Pa. C.S. § 6318(a)-(b)); *Dunkle v. Children's Hosp. Med. Ctr. Of Akron*, 5 N.E.3d 131 (Ohio App. 2013) (doctor who reported suspected child abuse had absolute immunity against claim of defamation arising from participation in judicial proceedings); *Ashmore v. Ashmore*, No. 11-5708, 2011 U.S. Dist. LEXIS 130902 (D.N.J. Nov. 10, 2011) (psychologist immune from defamation claim for child abuse accusations); *Zoe v. Impact Sys.*, No. 08-cv-1483, 2009 U.S. Dist. LEXIS 7906 (M.D. Pa. Feb. 4, 2009) (operator of community home for mentally disabled individuals was required to report allegations of abuse and was, therefore, immune from defamation claims); *Dodson v. Shelby County Children Servs. Bd.*, No. 17-96-20, 1997 Ohio App.

LEXIS 2017 (Ohio App. Apr. 23, 1997) (county children services board had no discretion as to whether to report names on sexual offender list and could not be liable for defamation).

32.     It is beyond peradventure from the extensive legislative history that the Legislature's intent in enacting the SSAA was to require that adults involved in amateur athletics, including members of NGBs, report allegations of abuse immediately and to encourage such reporting and minimize the inherent risk that comes with such reporting, Congress insulated NGBs from civil tort liability, including liability for the very claims that Nothstein asserts.  To permit Nothstein to move forward with his claims would undermine congressional intent in enacting the SSAA.

### Plaintiff's Claims Are Barred by the One-Year Statute of Limitations

33.     Actions of "libel, slander or invasion of privacy" are subject to a one-year statute of limitations, 42 Pa. C.S. § 5523(1), which begins to run from the time the defamatory statement is uttered.  *Brown v. DaVita, Inc.*, No. 09-3892, 2011 U.S. Dist. LEXIS 130933, at *6 (E.D. Pa. Nov. 14, 2011).

34.     Whether the statute of limitations has run is generally a question of law for the court to decide.  *American Indep. Ins. Co. v. Lederman*, No. 97-4153, 2000 U.S. Dist. LEXIS 12351, at *41 (E.D. Pa. Aug. 28, 2000) (citing *Hayward v. Medical Ctr. Of Beaver County*, 608 A.2d 1040, 1043 (Pa. 1992)).

35.     Plaintiff's Complaint is centered around events that occurred in October 2017, when USA Cycling, pursuant to the SSAA, reported allegations of sexual misconduct to SafeSport. Compl. at ¶¶ 10, 11,[1] 19, Dkt. No. 1.

---

[1]  Paragraph 11 states that the anonymous tipster contacted USA Cycling on October 30, 2018, eleven days after Nothstein announced his congressional candidacy.  The date is clearly a typographical error and should read October 30, 2017, as Nothstein declared his candidacy in 2017, not 2018.  Compl. at ¶ 10, Dkt. No. 1.

36.     Nothstein did not file this action until February 8, 2019.  Writ of Summons, Dkt. No. 1.

37.     Thus, to the extent Nothstein's claims relate to any alleged defamatory statements made <u>prior</u> to February 8, 2018, such claims are barred by the statute of limitations and must be dismissed.

## Plaintiff Failed to Exhaust His Administrative Remedies

38.     Alternatively, Nothstein's claims should likewise be dismissed because Nothstein has failed to exhaust his administrative remedies.

39.     Failure to exhaust administrative remedies "is in the nature of statute of limitations." *Jones v. Del. River Stevedores, Inc.*, No. 18-4276, 2019 U.S. Dist. LEXIS 20364, at *3 (E.D. Pa. Feb. 7, 2019) (citing *Anjelino v. N.Y. Times Co.*, 200 F.3d 73, 87 (3d Cir. 1999)).

40.     A failure to exhaust administrative remedies is considered under Fed. R. Civ. P. 12(b)(6).  *Id.*

41.     The court may, however, "consider facts outside the pleadings and . . . resolve factual disputes in ruling on [a] motion to dismiss for failure to exhaust administrative remedies." *Callaghan v. US Ctr. for Safe Sport*, No. 2:18-cv-336-FtM-99CM, 2018 U.S. Dist. LEXIS 147006, at *13-*14 (M.D. Fla. Aug. 29, 2018).

## The Failure to Exhaust under the Amateur Sports Act

42.     The Amateur Sports Act ("ASA"), 36 U.S.C. § 220501 *et seq.*, was passed by Congress in 1978 and created a "hierarchy for the management of amateur Olympic sports in the United States."  *Graham v. United States Anti-Doping Agency*, No. 5:10-CV-194-F, 2011 U.S. Dist. LEXIS 34637, at *10-*11 (E.D. N.C. Mar. 31, 2011).

43.     At the top of the hierarchy is the USOC, followed by NGBs for each sport.  *Id.*

(citing 36 U.S.C. § 220503).  The ASA vests the USOC "with power to 'exercise **exclusive jurisdiction**, directly or through constituent members or committees, over all matters pertaining to the United States participation in the Olympic games." *Id.* at *11 (citing 36 U.S.C. § 220503(3)(A)) (emphasis added).

44.     Pursuant to its statutory directives, the USOC has "established procedures by which disputes are to be resolved regarding an athlete's participation in international athletic competition." *Barnes v. Int'l Amateur Athletic Fed'n*, 862 F. Supp. 1537, 1543 (S.D. W. Va. 1993).

45.     Specifically, Article IX of the USOC Constitution requires to USOC to first attempt to resolve a dispute and, if unable to do so, permits an athlete to submit the matter to the American Arbitration Association for resolution.  *Id.* (citing Article IX, USOC Constitution).

46.     "Congressional intent to require athletes to exhaust their administrative remedies in regard to eligibility disputes appears evidence given the scope of the [ASA], the specific statutory mechanisms that have been established for speedy settlement of these disputes, and congressional intent to establish a centralized, monolithic structure for coordinating amateur athletics." *Id.* at 1544.

47.     Consequently, courts have consistently dismissed claims from athletes who have failed to exhaust their administrative remedies. *See Barnes*, 862 F. Supp. at 1546 (dismissing claims asserted by an Olympic shot putter who was suspended after allegedly testing positive for steroids and noting that the ASA established "a comprehensive mechanism for the resolution of disputes which furnishes the athlete the opportunity to pursue his claim through two different appellate levels . . . and the right to have the matter sent to binding arbitration"); *Pliuskaitis v. USA Swimming, Inc.*, 243 F. Supp. 3d 1217 (D. Utah 2017) (claims asserted by swimming coach

related to suspension for sexual misconduct were dismissed for failure to exhaust administrative remedies); *Lee v. United States Taekwondo Union*, 331 F. Supp. 2d 1252 (D. Haw. 2004) (claims by former Olympic coach that he was improperly removed dismissed for failure to exhaust administrative remedies); *Reynolds v. Athletics Congress of USA*, No. 91-3285, 1991 U.S. App. LEXIS 12277 (6th Cir. Jun 11, 1991) (claims dismissed due to failure of athlete to exhaust administrative remedies under ASA); *Deveraux v. Amateur Softball Ass'n*, 768 F. Supp. 618, 624 (S.D. Ohio 1991) (plaintiff's failure to exhaust administrative remedies under ASA "creates a situation whereby the Court's involvement is premature").

48.     Courts have broadly interpreted claims related to an athlete's eligibility.  *See, e.g.,* *Graham*, 2011 U.S. Dist. LEXIS 34637 at *15-*16 (finding plaintiff was required to exhaust administrative remedies because although he "*labeled* his claims as violations under the Constitution and the state law of slander, his claim undoubtedly challenges his eligibility to participate as a coach to amateur Olympic athletes" and fell within the "exclusive parameters" of the ASA)  (emphasis in original); *Slaney v. Int'l Amateur Ath. Fed'n*, 244 F.3d 580, 596 (7th Cir. 2001) (athlete's claims "whether framed as breach of contract, negligence, breach of fiduciary duty, fraud, constructive fraud, or negligent misrepresentation, are actually challenges to the method by which the USOC determines eligibility of athletes" and were properly dismissed for failure to exhaust administrative remedies).

### The Failure to Exhaust under the Safe Sport Authorization Act

49.     Against this backdrop, exhaustion of administrative remedies has also been required with respect to the SSAA.  *Callaghan*, 2008 U.S. Dist. LEXIS 147006, at *18 (finding exhaustion requirement under SSAA).

50.     Regardless of the label Nothstein has given his claims, it is clear from the

allegations of the Complaint that Nothstein is challenging the method by which USA Cycling determines eligibility of its athletes and investigates allegations of sexual abuse.

51.     Specifically, Nothstein claims USA Cycling wrongfully placed him on indefinite suspension for disciplinary reasons and that USA Cycling "violated his confidentiality and privacy rights during the pendency of the Safesport investigation."  Compl. at ¶¶ 24, 28-30, Dkt. No. 1. Those allegations clearly step upon the toes of the USOC and SafeSport, who have been charged with providing "swift resolution of conflicts and disputes involving amateur athletes."  36 U.S.C. § 220503(8).

52.     SafeSport is in the best position to determine whether its rules have been violated and whether the case should proceed to arbitration.

53.     As the plaintiff in *Callaghan*, Nothstein is free to "raise his objections to the scope of what may be considered at arbitration, which could include . . . procedural concerns raised in this lawsuit." *Callaghan*, 2018 U.S. Dist. LEXIS 147006, at *18.

54.      Because Nothstein fails to allege that he has exhausted his administrative remedies under the ASA and/or SSAA and has not done so, his claims must be dismissed.

WHEREFORE, Defendant USA Cycling respectfully requests that this Honorable Court grant its Motion and enter an order dismissing Plaintiff's Complaint in its entirety.

<div style="text-align: right;">

Respectfully submitted,

**GORDON REES SCULLY MANSUKHANI LLP**

BY:   s/ Alexander Nemiroff
        Alexander Nemiroff (Attorney ID 92250)
        Sara Anderson Frey (Attorney ID 82835)
        Three Logan Square
        1717 Arch Street, Suite 610
        Philadelphia, PA 19103
        (267) 602-2040/(215) 717-4009
        (215) 693-6650 (facsimile)
        anemiroff@grsm.com
        sfrey@grsm.com

</div>

Date: April 22, 2019                    Attorneys for Defendant USA Cycling, Inc.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

MARTIN W. NOTHSTEIN,             :
                                           :
                        Plaintiff,         :
                                           :
        v.                       :        Civil Action No. 5:19-cv-01631-EGS
                                         :
USA CYCLING,                    :
                                         :
                      Defendant.     :

**BRIEF IN SUPPORT OF DEFENDANT USA CYCLING, INC.'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendant, USA Cycling, Inc. (incorrectly named "USA Cycling") (hereinafter "Defendant" or "USA Cycling"), by and through its undersigned counsel, hereby submits this Brief in Support of its Motion to Dismiss the Complaint filed by Plaintiff Martin W. Nothstein ("Plaintiff" or "Nothstein").  For the following reasons, Plaintiff's Complaint fails to set forth a claim upon which relief may be granted and should, therefore, be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

**I.     INTRODUCTION**

Plaintiff, a former Olympic athlete, seeks to hold USA Cycling liable for defamation and invasion of privacy in connection with allegations of sexual misconduct received by USA Cycling. Plaintiff concedes that USA Cycling was mandated under federal law, the Safe Sport Authorization Act of 2017 ("SSAA") to report these allegations.  Nonetheless, Plaintiff seeks to hold USA Cycling liable for such mandated reporting, despite the SSAA's limitation of liability provision which immunizes USA Cycling from tort liability arising out of its mandated reporting obligations. As such, Plaintiff's claims are precluded and should be dismissed.

Alternatively, even if not precluded under the SSAA, many of the claims set forth by Plaintiff are precluded by the one-year statute of limitations for defamation and invasion of privacy

claims.   Any remaining claims must be dismissed due to Plaintiff's failure to exhaust administrative remedies.   For the following reasons, USA Cycling's Motion to Dismiss should be granted and Plaintiff's Complaint should be dismissed.

## II.   FACTUAL BACKGROUND[1]

Plaintiff commenced this action against USA Cycling by Writ of Summons filed in the Court of Common Pleas of Lehigh County, Pennsylvania on February 8, 2019.   Writ of Summons, Docket Number ("Dkt. No.") 1.   Plaintiff filed his Complaint on March 28, 2019, asserting three counts against USA Cycling:   Defamation (Count I), Invasion of Privacy – False Light (Count II), and Invasion of Privacy – Intrusion Upon Seclusion (Count III).   Complaint ("Compl."), Dkt. No. 1.   On April 15, 2019, USA Cycling removed this matter from the Court of Common Pleas of Lehigh County, Pennsylvania to this Court.   Notice of Removal, Dkt. No. 1.

Plaintiff's Complaint arises out of alleged defamatory, false, and misleading statements made concerning Plaintiff, causing him to sustain damages.   Compl. at ¶¶ 43, 54, 63, 64, 66, and 78, Dkt. No. 1.   Plaintiff asserts he is "the most highly decorated track cycling athlete the United States has ever produced."[2]   Compl. at ¶ 4, Dkt. No. 1.   Plaintiff avers that following his cycling career, he began a career in politics, including serving on the Lehigh County Board of Commissioners.   Compl. at ¶¶ 8, 9, Dkt. No. 1.   The Complaint states that on October 19, 2017, Plaintiff announced his candidacy for the newly formed Seventh Congressional District.   Compl. at ¶ 10, Dkt. No. 1.

Plaintiff alleges that eleven days after he announced his candidacy, "an 'anonymous tipster'

---

[1] Facts taken directly from Plaintiff's Complaint shall be considered true for the purposes of this motion only.   USA Cycling reserves the right to contest the truth of each and every allegation (factual or otherwise) contained in the Complaint should this motion be denied.

[2] In actuality, Sarah Hammer is the most decorated track cycling athlete the United States has ever produced. http://www.teamusa.org/usa-cycling/athletes/sarah-hammer (last visited 4/22/2019).

contacted USA Cycling and apparently accused Nothstein of engaging in sexual misconduct eighteen (18) years ago, in or about 2000 during the Olympic Games in Sydney, Australia." Compl. at ¶ 11, Dkt. No. 1.  Plaintiff claims that the report was "suspicious" and "was proven to be a total fabrication."  Compl. at ¶¶ 14, 17, Dkt. No. 1.  Plaintiff further alleges that pursuant to "federal statute and regulations, USA Cycling was obligated to turn over the report from the anonymous tipster to the U.S. Center for SafeSport ('SafeSport')" for investigation.  Compl. at ¶ 19, Dkt. No. 1.  Plaintiff claims that USA Cycling defamed him and violated his confidentiality and privacy rights during the SafeSport investigation by leaking information to the media and falsely reporting on its website that Plaintiff had been suspended from the sport of cycling due to disciplinary reasons.  Compl. at ¶ 20, Dkt. No. 1.

Specifically, Plaintiff asserts that on February 9, 2018, USA Cycling listed Nothstein on a list of suspended cyclists for disciplinary reasons and that the suspension was indefinite.  Compl. at ¶¶ 28-30, Dkt. No. 1.  Plaintiff also alleges that in May 2018, USA Cycling gave a phone interview to newspaper reporters and revealed that it had received a complaint about Nothstein which was forwarded to SafeSport and that the allegation included sexual misconduct.  Compl. at ¶38, Dkt. No. 1.

Plaintiff claims that as a result of Defendant's alleged misconduct, he has sustained damages including but not limited to injury to his reputation and integrity (Compl. at ¶ 54(b)(c)), diminished earning capacity (Compl. at ¶ 54(f)), severe emotional and physical distress (Compl. at ¶ 54(g)); and "other damages" (Compl. at ¶ 78).  Plaintiff alleges that these injuries are "severe and permanent."  Compl. at ¶ 66, Dkt. No. 1.

III.     **LEGAL ARGUMENT**

A.     **Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) authorizes the filing of a motion to dismiss where the complaint fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, a complaint must set forth "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A plaintiff must provide more than a formulaic recitation of a claim's elements that amount to mere labels and conclusions.  *Id.*

Following *Iqbal*, the Third Circuit has adopted a two-part analysis for district courts to follow when presented with a motion to dismiss.  "First, the factual and legal elements of a claim should be separated."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). While all well-pleaded facts must be accepted as true, the court may disregard any legal conclusions.  *Id.* Second, the court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'"  *Id.* at 211 (citing *Iqbal*, 556 U.S. at 678). Thus, "a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts."  *Id.*

Nothstein's Complaint fails to set forth a claim against USA Cycling upon which relief may be granted as a matter of law.  First, Nothstein's claims are precluded under the SSAA, which immunizes mandated reporters such as USA Cycling from civil actions for defamation.  Second, even if not precluded by the SSAA, many of Plaintiff's claims are barred by the one-year statute

of limitations.   Finally,  as  to  any  remaining  claims,  Nothstein  has  failed  to  exhaust  his

administrative remedies.  Dismissal, therefore, is warranted.

### B.      The SSAA Precludes Defamation and Invasion of Privacy Claims Against Mandated Reporters Such as USA Cycling

The SSAA was enacted "to promote a safe environment in sports that is free from abuse,

including emotional, physical, and sexual abuse, of any amateur athlete."  S.R. Rep. No. 115-443

at 1 (2018).  Consistent with this purpose, Congress designated SafeSport "as the independent

national safe sport organization" for the United States, with jurisdiction over the United States

Olympic  Committee  ("USOC")  and  National  Governing  Bodies  ("NGBs"),  including  USA

Cycling.  36 U.S.C. § 220541(a)(1).  SafeSport is charged with developing "training, oversight

practices,  policies,  and  procedures"  to  prevent  sexual  abuse  of  amateur  athletes  and  with

establishing "mechanisms that allow for the reporting, investigation, and resolution . . . of alleged

sexual abuse."  36 U.S.C. § 220541(a)(3)(4).

In considering the SSAA, the primary concern of Congress, as evidenced in the legislative

history,  was  to  ensure  that  suspected  incidents  of  abuse  are  reported.   Representative  Sheila

Jackson Lee noted that the bill:

> requires that personnel and employees of national governing bodies recognized by
> the U.S. Olympic Committee report suspected incidents of child abuse, including
> sexual abuse, . . . The importance of this is to cease, end, stop, never have it again
> for those victims – never report or hold it for years and years – who are impacted
> psychologically and impacted for the rest of their life.  Really, that is what has been
> happening in years past.

163 Cong. Rec. H. 4577, 4577 (May 25, 2017).  Congress heard testimony from scores of athletes

who had been subjected to unreported abuse, who spoke about the devastating impact the abuse

had on their lives.  *See* Cong. Rec. H. 633, 641-43 (Jan. 29, 2018).  Congress recognized the "need

to promote a culture of reporting sexual assault among youth athletes."  163 Cong. Rec. H. 4520,

4522 (May 24, 2017); *see also Id.* at 4522 ("We have too many examples of well-meaning adults

remaining silent in the face of child abuse.  This legislation is meant to push Americans to do what is right, even if it is not easy").

As enacted, the SSAA requires all adult members of a NGB to "report immediately" to SafeSport any allegation of child abuse of a minor amateur athlete whenever such members learn of facts leading them to reasonably suspect the minor athlete has suffered an incident of child abuse.  36 U.S.C. § 220542(1)(2)(A).  It is clear from the legislative history that Congress intended to impose "mandatory reporting" obligations upon adults working at NGBs.  *See* 164 Cong. Rec. H. 633, 635 (Jan. 29, 2018) ("This bill expands these **mandatory** reporting requirements to adults working at national governing boards. . .") (emphasis added); *Id.* at 636 ("This bill requires any individual who interacts with our amateur athletes to report suspected child abuse . . . If they fail to do so, they will be held accountable by the new law"); 163 Cong. Rec. H. 4577, 4578 (May 25, 2017) (noting bill "requires **mandatory** and immediate reporting of" abuse) (emphasis added).

Congress did, however, recognize the risk to NGBs that comes with mandatory reporting requirements.  "To minimize the risk . . . of litigation from actions performed in the course of the investigation, adjudication, and sharing of information of abuse allegations . . . [the SSAA] would provide certain limitations on liability for [SafeSport], NGBs," and other amateur sports organizations.  S. R. Rep. 115-443, at 2.  Congress recognized that access to adequate insurance has been a challenge and believed that "tort liability exposure should be calibrated to allow [SafeSport] to continue to work to protect amateur athletes from abuse by limiting the risk of potential litigation arising in the course of its legitimate activities."  *Id.* at 3.  To address these concerns, Congress included the following limitation of liability provision in the SSAA:

> (1)  In general.  Except as provided in paragraph (2), ***an applicable entity shall not be liable for damages in any civil action for defamation, libel, slander, or damage to reputation*** arising out of any action or communication, if the action arises from the execution of the responsibilities or functions described in this section, section

6

220542, or section 220543.

36 U.S.C. § 220541(d) (emphasis added).  The Legislature contemplated that for this "protection [to] extend not only to actions for defamation, libel, slander, or damage to reputation, but not limited to false light, intrusion upon seclusion, tortious interference, and abuse of process."  S.R. Rep. 115-443, at 4.

Based upon the above provision and legislative history, it is clear that the claims asserted against USA Cycling are precluded.  Indeed, Nothstein admits that USA Cycling is subject to the SSAA and that "USA Cycling was **obligated** to turn over the report from the anonymous tipster to" SafeSport.  Compl. at ¶ 19, Dkt. No. 1 (emphasis added).  As such, USA Cycling is immunized from the defamation and invasion of privacy claims asserted by Nothstein.

Research reveals only two reported cases discussing the SSAA since its enactment last year, neither of which address the limitation of liability provision.[3]  Nonetheless, courts have consistently held that mandatory reporters are immunized from tort liability under similar statutes, reasoning that such laws were enacted to encourage reporting.  *Rubinstein v. Baron*, 529 A.2d 1061, 1063 (N.J. Super. 1987).  As one court aptly stated "there can be no disincentive to report greater than the specter of the length and expense of a lawsuit."  *Dobson v. Harris*, 530 S.E.2d 829, 835 (N.C. 2000); *see also Miller v. Watson Inst.*, No. GD13-009177, 2013 Pa. Dist. & Cnty. Dec. LEXIS 244 (Allegheny Cnty. Nov. 1, 2013) (finding social worker was mandated reporter of child abuse and was immune from liability under 23 Pa. C.S. § 6318(a)-(b)); *Dunkle v. Children's Hosp. Med. Ctr. Of Akron*, 5 N.E.3d 131 (Ohio App. 2013) (doctor who reported suspected child abuse had absolute immunity against claim of defamation arising from participation in judicial

---

[3] *Gonzalez v. United States Ctr. for SafeSport*, No. 18-61190-Civ-Scola, 2019 U.S. Dist. LEXIS 45126 (S.D. Fla. Mar. 28, 2019); *Callaghan v. US Ctr. for SafeSport*, No. 2:18-cv-336-FtM-99CM (M.D. Fla. Aug. 29, 2018).

proceedings); *Ashmore v. Ashmore*, No. 11-5708, 2011 U.S. Dist. LEXIS 130902 (D.N.J. Nov. 10, 2011) (psychologist immune from defamation claim for child abuse accusations); *Zoe v. Impact Sys.*, No. 08-CV-1483, 2009 U.S. Dist. LEXIS 7906 (M.D. Pa. Feb. 4, 2009) (operator of community home for mentally disabled individuals was required to report allegations of abuse and was, therefore, immune from defamation claims); *Dodson v. Shelby County Children Servs. Bd.*, No. 17-96-20, 1997 Ohio App. LEXIS 2017 (Ohio App. Apr. 23, 1997) (county children services board had no discretion as to whether to report names on sexual offender list and could not be liable for defamation).

It is beyond peradventure from the extensive legislative history that the Legislature's intent in enacting the SSAA was to require that adults involved in amateur athletics, including members of NGBs, report allegations of abuse immediately.  To encourage such reporting and minimize the inherent risk that comes with such reporting, Congress insulated NGBs from civil tort liability, including liability for the very claims that Nothstein asserts.  To permit Nothstein to move forward with his claims would undermine congressional intent in enacting the SSAA and only serve to deter such reporting.

Nothstein concedes that USA Cycling was obligated to report the allegations of sexual misconduct from the "anonymous tipster" to SafeSport.  Compl. at ¶ 19, Dkt. No. 1.  The SSAA precludes liability for defamation and invasion of privacy torts for such reporting.  As such, Nothstein has failed to state a claim upon which relief may be granted and the Complaint should be dismissed.

**C.    Plaintiff's Claims Are Barred by the One-Year Statute of Limitations**

Plaintiff's Complaint is centered around events that occurred in October 2017, when USA Cycling, pursuant to the SSAA, reported allegations of sexual misconduct to SafeSport.  Compl.

at ¶¶ 10, 11,[4] 19, Dkt. No. 1.  Because these events occurred more than one year before Plaintiff initiated his lawsuit, they are barred by the statute of limitations.

Actions of "libel, slander or invasion of privacy" are subject to a one-year statute of limitations.  42 Pa. C.S. § 5523(1).  The statute of limitations begins to run from the time the defamatory statement is uttered.  *Brown v. DaVita, Inc.*, No. 09-3892, 2011 U.S. Dist. LEXIS 130933, at *6 (E.D. Pa. Nov. 14, 2011).  Whether the statute of limitations has run is generally a question of law for the court to decide.  *American Indep. Ins. Co. v. Lederman*, No. 97-4153, 2000 U.S. Dist. LEXIS 12351, at *41 (E.D. Pa. Aug. 28, 2000) (citing *Hayward v. Medical Ctr. Of Beaver County*, 608 A.2d 1040, 1043 (Pa. 1992)).

Here, the Complaint alleges that USA Cycling defamed Nothstein in October 2017 when it reported allegations of sexual misconduct to SafeSport.  Compl. at ¶ 20, Dkt. No. 1.  Nothstein did not file this action until February 8, 2019.  Writ of Summons, Dkt. No. 1.  Thus, to the extent Nothstein's claims relate to any alleged defamatory statements made prior to February 8, 2018, such claims are barred by the statute of limitations and must be dismissed.

**D.** **Plaintiff Failed to Exhaust His Administrative Remedies**

Alternatively, Nothstein's claims should likewise be dismissed because Nothstein has failed to exhaust his administrative remedies.

**a.** **The Standard for Dismissal for Failure to Exhaust**

Failure to exhaust administrative remedies "is in the nature of statute of limitations." *Jones v. Del. River Stevedores, Inc.*, No. 18-4276, 2019 U.S. Dist. LEXIS 20364, at *3 (E.D. Pa. Feb. 7, 2019) (citing *Anjelino v. N.Y. Times Co.*, 200 F.3d 73, 87 (3d Cir. 1999)).  A failure to exhaust

---

[4]  Paragraph 11 states that the anonymous tipster contacted USA Cycling on October 30, 2018, eleven days after Nothstein announced his congressional candidacy.  The date is clearly a typographical error and should read October 30, 2017, as Nothstein declared his candidacy in 2017, not 2018.  Compl. at ¶ 10, Dkt. No. 1.

administrative remedies is considered under Fed. R. Civ. P. 12(b)(6).  *Id.*  The court may, however, "consider facts outside the pleadings and . . . resolve factual disputes in ruling on [a] motion to dismiss for failure to exhaust administrative remedies."  *Callaghan*, 2018 U.S. Dist. LEXIS 147006, at *13-*14.

### b.      The Failure to Exhaust under the Amateur Sports Act

The Amateur Sports Act ("ASA"), 36 U.S.C. § 220501 *et seq.*, was passed by Congress in 1978 and created a "hierarchy for the management of amateur Olympic sports in the United States."  *Graham v. United States Anti-Doping Agency*, No. 5:10-CV-194-F, 2011 U.S. Dist. LEXIS 34637, at *10-*11 (E.D. N.C. Mar. 31, 2011).  At the top of the hierarchy is the USOC, followed by NGBs for each sport.  *Id.* (citing 36 U.S.C. § 220503).  The ASA vests the USOC "with power to 'exercise **exclusive jurisdiction**, directly or through constituent members or committees, over all matters pertaining to the United States participation in the Olympic games." *Id.* at *11 (citing 36 U.S.C. § 220503(3)(A)) (emphasis added).

Pursuant to its statutory directives, the USOC has "established procedures by which disputes are to be resolved regarding an athlete's participation in international athletic competition." *Barnes v. Int'l Amateur Athletic Fed'n*, 862 F. Supp. 1537, 1543 (S.D.W. Va. 1993). Specifically, Article IX of the USOC Constitution requires the USOC to first attempt to resolve a dispute and, if unable to do so, permits an athlete to submit the matter to the American Arbitration Association for resolution.  *Id.* (citing Article IX, USOC Constitution).  "Congressional intent to require athletes to exhaust their administrative remedies in regard to eligibility disputes appears evidence given the scope of the [ASA], the specific statutory mechanisms that have been established for speedy settlement of these disputes, and congressional intent to establish a centralized, monolithic structure for coordinating amateur athletics."  *Id.* at 1544.

10

Consequently, courts have consistently dismissed claims by athletes who have failed to exhaust their administrative remedies.  For example, in *Barnes*, the court dismissed claims asserted by an Olympic shot putter who was suspended after allegedly testing positive for steroids.  862 F. Supp. at 1539.  The court noted that the ASA established "a comprehensive mechanism for the resolution of disputes which furnishes the athlete the opportunity to pursue his claim through two different appellate levels . . . and the right to have the matter sent to binding arbitration."  *Id.*  at 1546; *see also Pliuskaitis v. USA Swimming, Inc.*, 243 F. Supp. 3d 1217 (D. Utah 2017) (claims asserted by swimming coach related to suspension for sexual misconduct were dismissed for failure to exhaust administrative remedies); *Lee v. United States Taekwondo Union*, 331 F. Supp. 2d 1252 (D. Haw. 2004) (claims by former Olympic coach that he was improperly removed dismissed for failure to exhaust administrative remedies); *Reynolds v. Athletics Congress of USA*, No. 91-3285, 1991 U.S. App. LEXIS 12277 (6th Cir. Jun 11, 1991) (claims dismissed due to failure of athlete to exhaust administrative remedies under ASA); *Deveraux v. Amateur Softball Ass'n*, 768 F. Supp. 618, 624 (S.D. Ohio 1991) (plaintiff's failure to exhaust administrative remedies under ASA "creates a situation whereby the Court's involvement is premature").

Courts have broadly interpreted claims related to an athlete's eligibility.  In *Graham*, the plaintiff filed suit asserting claims of slander and violation of his constitutional rights against the United States Doping Agency ("USADA") after the USADA alleged the plaintiff willing provided steroids to athletes and banned him for life.  2011 U.S. Dist. LEXIS 34637 at *1-*2.  The USADA filed a motion to dismiss based on the plaintiff's failure to exhaust administrative remedies.  The plaintiff argued that his claims of slander and constitutional violations fell outside the purview of the ASA.  The court disagreed, finding that "all of these claims are premised on challenging Graham's eligibility, namely, the lifetime ban imposed on Graham as a coach for amateur athletes

in Olympic sports." *Id.* at *15. Thus, although Graham "*labeled* his claims as violations under the Constitution and the state law of slander, his claim undoubtedly challenges his eligibility to participate as a coach to amateur Olympic athletes" and fell within the "exclusive parameters" of the ASA. *Id.* (emphasis in original); *see also Slaney v. Int'l Amateur Ath. Fed'n*, 244 F.3d 580, 596 (7th Cir. 2001) (athlete's claims "whether framed as breach of contract, negligence, breach of fiduciary duty, fraud, constructive fraud, or negligent misrepresentation, are actually challenges to the method by which the USOC determines eligibility of athletes" and were properly dismissed for failure to exhaust administrative remedies).

### c.    The Failure to Exhaust under the Safe Sport Authorization Act

Against this backdrop, exhaustion of administrative remedies has also been required with respect to the SSAA. In one of the two decisions deciphering the SSAA since its enactment last year, the court dismissed the athlete's claims for failing to exhaust administrative remedies. *Callaghan*, 2018 U.S. Dist. LEXIS 147006, at *18. There, the plaintiff, an Olympic figure skating coach, filed suit against SafeSport, alleging that SafeSport violated its own rules and procedures in investigating allegations of sexual misconduct filed against plaintiff. *Id.* at *1. SafeSport filed a motion to dismiss arguing, among other things, that the plaintiff failed to exhaust his administrative remedies. Although recognizing there was no explicit mention of administrative exhausting in the SSAA, the court noted that the "USOC has exclusive jurisdiction . . . to determine all matters pertaining to athlete eligibility." *Id.* at *14. "In turn," the court continued, "Safe Sport has exclusive authority over actual or suspected sexual misconduct." *Id.* As part of its statutory duties, SafeSport, along with the USOC, has "developed an investigatory process that is conducted by individuals with the requisite expertise to fairly adjudicate the allegations of sexual abuse." *Id.* The court could not see any reason "why an exhaustion requirement should not apply in this case."

*Id.* at \*14-\*15.

The court rejected the plaintiff's argument that he was not required to exhaust administrative remedies for his claims that SafeSport breached its own rules in instituting the interim suspension against him. *Id.* at \*15. The court examined the Supplementary Rules for U.S. Olympic and Paralympic Safe Sport Arbitrations, which provide that arbitration "shall" resolve whether a party has violated the Safe Sport Code and/or the appropriate sanction, if any. *Id.* at \*17. The court further noted that the arbitrator has the power to rule on the arbitration body's jurisdiction and thus, the plaintiff could raise his objections to the scope of what may be considered at arbitration. *Id.* at \*18.

Regardless of the label Nothstein has given his claims, it is clear from the allegations of the Complaint that Nothstein is challenging the method by which USA Cycling determines eligibility of its athletes and investigates allegations of sexual abuse. Specifically, Nothstein claims USA Cycling wrongfully placed him on indefinite suspension for disciplinary reasons and that USA Cycling "violated his confidentiality and privacy rights during the pendency of the Safesport investigation." Compl. at ¶¶ 24, 28-30, Dkt. No. 1. Those allegations clearly step upon the toes of the USOC and SafeSport, who have been charged with providing "swift resolution of conflicts and disputes involving amateur athletes." 36 U.S.C. § 220503(8).

SafeSport is in the best position to determine whether its rules have been violated and whether the case should proceed to arbitration. As the plaintiff in *Callaghan*, Nothstein is free to "raise his objections to the scope of what may be considered at arbitration, which could include . . . procedural concerns raised in this lawsuit." *Callaghan*, 2018 U.S. Dist. LEXIS 147006, at \*18. Because Nothstein fails to allege that he has exhausted his administrative remedies under the ASA and/or SSAA and has not done so, his claims must be dismissed.

**IV.     CONCLUSION**

For all the foregoing reasons, Defendant USA Cycling respectfully requests that this Honorable Court grant its Motion to Dismiss and enter an order dismissing Plaintiff's Complaint in its entirety, with prejudice.

<div style="margin-left: 40%">

Respectfully submitted,

**GORDON REES SCULLY MANSUKHANI LLP**

BY:___s/ Alexander Nemiroff_____
        Alexander Nemiroff (Attorney ID 92250)
        Sara Anderson Frey (Attorney ID 82835)
        Three Logan Square
        1717 Arch Street, Suite 610
        Philadelphia, PA 19103
        (267) 602-2040/(215) 717-4009
        (215) 693-6650 (facsimile)
        anemiroff@grsm.com
        sfrey@grsm.com

</div>

Date: April 22, 2019                     Attorneys for Defendant USA Cycling, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I, Alexander Nemiroff, Esquire, hereby certify that on the 22nd day of April, 2019, I caused

to be served a true and correct copy of the foregoing Motion to Dismiss and Brief in Support of

Motion to Dismiss upon the following counsel via the court's ECF service:

David P. Heim, Esquire
George Bochetto, Esquire
Bochetto & Lentz, P.C.
1524 Locust Street
Philadelphia, PA  19102


                                        s/ Alexander Nemiroff